

**DISTRICT ATTORNEY'S OFFICE**
1421 ARCH STREET
PHILADELPHIA, PENNSYLVANIA 19102
686-8000

**LYNNE ABRAHAM**
**DISTRICT ATTORNEY**

February 16, 2005

Honorable Thomas J. Rueter
United States District Court
U.S. Courthouse
601 Market Street, Room 3038
Philadelphia, PA 19106-1742

**RE:    Jermel Shuler v. Louis Folio, et al.**
**Civil Action No.  04-4704**

Dear Judge Rueter:

Enclosed please find a copy of our Response to the Petition for Writ of Habeas Corpus, which has been filed with the Clerk.

Respectfully submitted,

SUSAN E. AFFRONTI
Assistant District Attorney

/sea
Enclosure
cc:    Jermel Shuler

| JERMEL SHULER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| LOUIS FOLIO, et al | : | NO. 04-4704 |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

**LYNNE ABRAHAM**, District Attorney of Philadelphia County, by **SUSAN E. AFFRONTI**, Assistant District Attorney, and **THOMAS W. DOLGENOS**, Chief, Federal Litigation, on behalf of respondents, respectfully requests that the Petition for Writ of Habeas Corpus be denied without a hearing and, in support thereof, states:

1.  A seriatim answer is dispensed with for the sake of clarity. The following numbered paragraphs outline the factual and procedural background of the case.

2.  On November 8, 1997, petitioner and two co-defendants broke into the home of Essie May Thomas. They beat and stabbed the victim to death, and then stole money, lottery tickets, and a handgun.

3.  On November 30, 1998, a jury found petitioner and his two co-defendants guilty of second-degree murder, burglary, possession of an instrument of crime, and criminal conspiracy. Honorable Steven R. Geroff sentenced petitioner to life in prison.[1] (The Trial Court Opinion is attached as Exhibit A).

---

[1] Petitioner's original sentence was life in prison with a concurrent sentence on the burglary. The Superior Court resentenced petitioner, finding that the burglary conviction had to merge with the second-degree murder conviction for sentencing purposes.

4.        On October 6, 2000, the Pennsylvania Superior Court affirmed petitioner's conviction. Commonwealth v. Shuler, 767 A.2d 1114 (Pa. Super. 2000) (Table) (Memorandum is attached as Exhibit B).

5.        On May 29, 2001, the Pennsylvania Supreme Court denied the petition for allowance of appeal. Commonwealth v. Shuler, 782 A.2d 544 (Pa. 2001) (Table).

6.        On May 30, 2002, petitioner filed a pro se petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, et seq. Counsel was appointed and subsequently, filed a no merit letter pursuant to Commonwealth v. Finley, 379 Pa. Super. 390, 393-394, 550 A.2d 213, 215 (1988). On December 4, 2002, the petition was dismissed. (PCRA Court Opinion is attached as Exhibit C).

7.        On February 10, 2004, the Pennsylvania Superior Court affirmed the decision. Commonwealth v. Shuler, 849 A.2d 610 (Pa. 2004)(Table)(Memorandum is attached as Exhibit D).

8.        Petitioner did not seek allocatur.

9.        On October 7, 2004, petitioner filed the present petition seeking habeas corpus relief, claiming that the evidence was insufficient to sustain the conviction for murder, burglary, possession of an instrument of crime, and conspiracy.

10.      Respondents deny that petitioner is entitled to federal habeas relief; his petition is untimely and must be dismissed.

## DISCUSSION

## THE PETITION IS TIME-BARRED AND MUST BE DISMISSED

This petition is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), which became effective on April 24, 1996. 28 U.S.C. § § 2241-2255.

Section 2244(d) creates a strict one-year time limit for filing new petitions and provides

as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d) (1).

A judgment of sentence does not become "final" for purposes of AEDPA's statute

of limitations until the 90-day time for filing a timely petition for certiorari review

expires at the conclusion of direct appeal. See Kapral v. United States, 166 F.3d 565, 575

(3d Cir. 1999); Johnson v. Hendricks, 314 F.3d 159, 161 (3d Cir. 2002). Thus,

petitioner's convictions became final on August 27, 2001.[2] Petitioner thus was required

to initiate his federal habeas action on or before August 26, 2002, unless this deadline

was subject to statutory or equitable tolling.[3]

The one-year time limitation found in AEDPA is statutorily tolled during the time

when "a properly filed application for State post-conviction or other collateral review

with respect to the pertinent judgment or claim is pending...." 28 U.S.C. § 2244(d)(2).

The one-year habeas time limit for the petitioner was tolled upon the filing of petitioner's

PCRA petition on May 30, 2002 – with 89 days remaining in the allowable habeas filing

period. The Pennsylvania Superior Court denied the appeal on February 10, 2004.

Petitioner did not seek allocatur review. Consequently, the remaining habeas limitations

period began to run on March 11, 2004,[4] and expired on June 8, 2004.

As such, petitioner was required to file his petition for federal habeas relief by

June 8, 2004. However, the original habeas petition was not docketed until October 7,

---

[2] None of the other possible "start dates" found in § 2244(d)(1) apply here. No state
action prevented the timely filing of this habeas action; petitioner does not rely on a new
rule of retroactively applicable constitutional law; and factual predicates for his claims
stem from events that took place during the trial and were discoverable in the exercise of
due diligence long ago.

[3] Petitioner cannot, and does not, argue that the limitations period under AEDPA should
be equitably tolled. His case simply is not one of those rare situations in which the
"extraordinary circumstances" necessary for equitable tolling are present. See Miller v.
New Jersey State Department of Corrections, 145 F.3d 616, 618 (3d Cir. 1998)(holding
that equitable tolling of the habeas statute may only occur in those rare circumstances
where petitioner has been prevented in some extraordinary way from asserting his rights).

[4] The PCRA petition is no longer "pending" upon the expiration of the thirty-day period
to file a petition for allowance of appeal. Cf. Swartz v. Meyers, 204 F.3d 417 (3d Cir.
2000).

4

2004, four months after the deadline. As a result, the petition is untimely and must be dismissed.[5]

---

[5] Respondents have not addressed the merits of this petition, however, a supplemental brief on the merits will be provided at the Court's request. However, respondents would note that the petition raises two claims of sufficiency, both of which were reviewed by the state court on direct appeal. When reviewing a claim that evidence was insufficient to support the verdict, a federal court engages in a narrowly restricted analysis. Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781 (1979)(the court must assess the evidence in the light most favorable to the prosecution, and decide if the jury's determination of guilt was so unreasonable that no rational trier of fact could have found the elements of the crime beyond a reasonable doubt). The Third Circuit has found that the standard reviewing the sufficiency of the evidence is the same under both Federal and Pennsylvania law. Evans v. Court of Common Pleas Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992).

A lengthy recitation of the facts can be found in both the trial court's opinion and the Superior Court's opinion. See Exhibit A, p. 2-9; Exhibit B, 2-5. The Superior Court also specifically articulates the requirements to establish each crime under Pennsylvania law. Exhibit B, 5-10. Clearly, the evidence was sufficient to support the verdict.

WHEREFORE, respondents respectfully request that the Petition for Writ of

Habeas Corpus be denied without a hearing.

Respectfully submitted,

SUSAN E. AFFRONTI
Assistant District Attorney

THOMAS W. DOLGENOS
Chief, Federal Litigation

**Exhibit A**

IN THE COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

TRIAL DIVISION - CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA    :    9801-0300 2/3
                                :
**FILED**                       :    NO. 0001 - MURDER
                                :
        vs.                     :    NO. 0003 - BURGLARY
        DEC 15 1999             :
                                :    NO. 0007 - PIC
        Criminal Appeals Unit   :
        First Judicial District of PA:   NO. 0008 - CRIMINAL CONSPIRACY
JERMEL SHULER

OPINION

GEROFF, J.

On November 30, 1998, after a jury trial, the defendant
was found guilty of second degree murder, burglary, possessing an
instrument of a crime and criminal conspiracy. A timely appeal was
filed.

The defendant challenges the weight and sufficiency of
the evidence in his Statement of Matters Complained of on Appeal.
He claims that there was no credible evidence which placed him
inside the decedent's house at the time she was murdered. He
also claims that the testimony of the Commonwealth's eyewitness
was inconsistent and was contradicted by other evidence.
(Statement of Matters Complained of on Appeal 3.a. & 3.b.).

The standard of appellate review, where it is argued
that the verdict is contrary to the weight of the evidence, is

1

�537 -4

set forth in Commonwealth v. Taylor, 324 Pa. Super 420, 425, 471

A.2d 1228, 1230 (1984):

> Whether a new trial should be granted on
> grounds that the verdict is against the
> weight of the evidence is addressed to the
> sound discretion of the trial judge, and his
> decision will not be reversed on appeal
> unless there has been an abuse of discretion
> (Citations omitted). The test is not whether
> the court would have decided the case in the
> same way but whether the verdict is so
> contrary to the evidence as to make the award
> of a new trial imperative so that right may
> be given another opportunity to prevail.

When the sufficiency of the evidence is challenged, the

court must determine whether, viewing the evidence in the light

most favorable to the Commonwealth as the verdict winner and

drawing all proper inferences favorable to the Commonwealth, the

trier of fact could have determined that all the elements of the

crime were established beyond reasonable doubt. Commonwealth v.

Hagan, 539 Pa. 609, 613, 654 A.2d 541, 543 (1995); Commonwealth

v. Martin, 433 Pa.Super. 280, 285, 640 A.2d 921, 923 (1994).

Police Officer Michael Hale testified that on November

10, 1997, he went to the home of the decedent, Essie May Thomas,

at 2952 North Judson Street and observed her lying on the floor

of the living room. A pane of glass was missing from the area of

the door knob of the front door and pieces of glass were lying on

the floor inside the door. The door frame was damaged at the

2

point where the lock mechanism of the door intersected it. The back door of the house was open, but was undamaged. (N.T. 11/18/98, p. 39-43, 52). Officer Hale observed what he called "splatletts" of blood on the walls, the couch, the carpet and throughout the living room. (N.T. 11/18/98, p. 61).

Detective Theodore Cannon testified that he also observed the front door of the decedent's house which had been forced open. (N.T. 11/18/98, p. 64). The decedent's body was located in the archway between the living room and the dining room. (N.T. 11/18/98, p. 71). Most of the blood was in the living room. Located in the living room were a bloody handprint and a bloody broom with a bent handle. (N.T. 11/18/98, p. 70-71). There were smeared footprints of blood in the kitchen. (N.T. 11/18/98, p. 75). Eric Palmer, the decedent's nephew, was on the porch of the house next door when Detective Concannon arrived. Mr. Palmer was taken to the Police Administration Building.(N.T. 11/18/98, pp. 64,77-78).

Officer Michael Ferguson, a member of the Mobile Crime Detection Unit, testified that he was assigned to take photographs of the house and to collect physical evidence such as fingerprints and all items which had blood stains such as a walking cane and the broom handle; each was recorded on property receipt number 20109267. (N.T. 11/18/98, pp. 96-97, 101-106,

3

108-109).

Mr. Palmer testified that he came to Philadelphia from Baltimore on November 9, 1997, on a Greyhound bus at approximately 6:30 p.m. (N.T. 11/19/98, pp. 29-30). His intention was to stay with his aunt, the decedent. (N.T. 11/19/98, p. 31). When he arrived, he called his aunt on the telephone, but there was no answer. (N.T. 11/19/98, p. 30). Mr. Palmer did not go to his aunt's home that evening, because he said that he knew from prior experience that if she did not answer the telephone she would not want to receive his visit that night and probably would not even have answered a knock on her door. (N.T. 11/19/98, p. 32-33).

Mr. Palmer went to his aunt's house at 7:00 a.m. the next morning. He saw that there was glass missing from the front door. He looked in and saw her lying on the floor. She did not respond to his calls to her, so he kicked the door open and went inside. He saw what looked like blood and went to the front porch. He saw a neighbor, Carlton Lawrence, and asked him to call 911. An ambulance and a police officer arrived about three minutes later. (N.T. 11/19/98, morning session, pp. 33-34).

Carlton Lawrence, the neighbor who called 911 at Eric Palmer's request, testified that his house was immediately next to the decedent's. They had been neighbors for about three

4

years. The wall between their houses was so thin that he could hear ". . . basically everything that goes on in her house." (N.T. 11/19/98, afternoon session, p. 6). He usually left for work at 7:00 a.m. Frequently, the decedent and he would walk together. (N.T. 11/19/98, afternoon session, pp. 5-6). On Friday, November 7, 1997, he was already on the bus when he saw the decedent walking on the street at about 7:00 a.m. (N.T. 11/19/98, afternoon session, pp. 7-8). On Saturday November 8, 1997, Mr. Lawrence took his wife out to dinner at about 7:00 p.m. to celebrate her birthday. When he and his wife left the house he could hear the usual noises coming from the decedent's house. When he returned at midnight, there was no noise coming from the decedent's house. This circumstance was not unusual, because the noise from the decedent's house usually stopped at 8:00 or 9:00 p.m. (N.T. 11/19/98, afternoon session, pp. 8-9). Mr. Lawrence spent Sunday in the living room of his home and did not hear any sounds coming from the decedent's house. (N.T. 11/19/98, afternoon session, pp. 10-11).

On Monday morning, November 10, 1999, Mr. Lawrence heard someone knocking on the decedent's door. He went to investigate and met Eric Palmer who asked him to call the police. (N.T. 11/19/98, afternoon session, p. 11-12).

Dwadia Brown testified that the decedent's house was

5

directly across the street from her house. (N.T. 11/20/98 a.m. session, p. 33). On Saturday, November 8, 1997 at approximately 10:45 p.m., she was standing at her front door having just concluded a conversation with a neighbor, Craig Brown, when she noticed two men standing on the decedent's porch and one coming out the door of the house. (N.T. 11/20/98 a.m. session, p. 32-34). Ms. Brown had an opportunity to see the faces of the three men, each of whom she recognized from the neighborhood. (N.T. 11/20/98 a.m. session, p. 34-35). In the courtroom, Ms. Brown pointed out the defendant and the two co-defendants as being the persons she had seen that night. (N.T. 11/20/98 a.m. session, pp. 35-36). She testified that defendant Brittingham was at the door area of the house. He reached through the door where the glass was missing. He put a brown envelope in his pocket. Ms Brown heard him say to defendants Shuler and Smith, "We forgot to lock the back door." (N.T. 11/20/98 a.m. session, p. 37). She saw the defendant Brittingham reach inside the door and lock it. (N.T. 11/20/98 p.m. session, pp. 4-5). The three men remained on the porch for a short time and then walked in the direction of Judson and Indiana Streets. (N.T. 11/20/98 a.m. session, p. 37).

Ms. Brown testified that she did not speak to the police when they were at the decedent's house on Monday, November

6

10, 1997. She said she did tell a girlfriend, Monique, what she had seen. (N.T. 11/20/98 a.m. session, pp. 39-40).

On Friday, November 14, 1997, Detective Michael Walter came to her house. She told him that she had seen three men, and she signed a written statement for him (C-33). He told her that he would return the next day. (N.T. 11/20/98 a.m. session, p. 42).

Ms. Brown testified that later that day defendant Rasheed Smith stopped her on the street and told her that he ". . . heard I was giving up the tapes." (N.T. 11/20/98 a.m. session, p. 44). She understood him to mean, "Telling what I saw." (N.T. 11/20/98 a.m. session, p. 44). She said that defendant Smith asked her how she could jeopardize herself and her children. (N.T. 11/20/98 a.m. session, p. 44).

The next day, when Detective Walter came to her house, she told him what defendant Smith had said to her. Detective Walter took her to the Homicide Division at Eighth an Race Streets, where she picked the three defendants out of photo arrays created by computer. She also gave another statement (DB-3). (N.T. 11/20/98 a.m. session, pp. 45-47).

Later in November, 1997, Ms. Brown and her family were relocated for their protection to a place she described as "lovely." (N.T. 11/20/98 a.m. session, pp. 47-48). Later, her

7

family was moved to another location which was not as nice. In the hope of being sent back to the first place, she told the District Attorney's people that she had again been threatened. She admitted in her direct testimony that she had lied and explained why she had done so. (N.T. 11/20/98 a.m. session, pp. 50-51).

Detective Michael Walter testified that when he interviewed Dwadia Brown on November 14, 1997, she gave him a description of the three males she had seen on the decedent's porch on Friday November 8, 1997. She also told him where the three were likely to be found. Detective Walter drove around the corner and saw defendant Jermal Shuler, whose identity he verified through a brief stop by a uniformed officer. (N.T. 11/20/98 p.m. session, pp. 103-106). Detective Walter testified that Ms. Brown selected the photograph of defendant, Rasheed Smith, (C-34C) from among six different photos (C-34 A-F). (N.T. 11/20/98 p.m. session, pp. 107-110). She selected defendant Jermal Shuler's picture from another photo array later that day. (N.T. 11/20/98 p.m. session, p. 110).

Detective Rodden testified that using a computer and with the suggestion from Dwadia Brown that the third male's first name was Mark, he called up a series of photo arrays. The first group contained 48 pictures with each array

containing the photographs of eight individuals. Ms. Brown did
not pick anyone from the first group of 48. When the next group
was displayed, Ms. Brown selected defendant Mark Brittingham (C-
36). (N.T. 11/20/98 p.m. session, pp. 125-129).

Dr. Bennett Preston of the Philadelphia Medical
Examiner's office testified that he performed the autopsy on the
decedent's body. The decedent had been severely beaten and
stabbed multiple times. He concluded that the manner of her
death was homicide and that the condition of the body was such as
to be consistent with death having occurred on Saturday evening,
November 8, 1997. (N.T. 11/23/98 morning session, pp. 3-11).
The blunt trauma could have been caused by the broom handle (C-3)
which was found in the decedent's home. (N.T. 11/23/98 morning
session, pp. 8-9).

David Brewery, a cousin of the decedent, testified that
when he was notified of the decedent's death, he went to her
house to search for valuables. Her Bible, a .32 caliber revolver
and her MAC card were missing. He testified that he knew the
decedent kept money and lottery tickets in her Bible. He did not
locate any money or lottery tickets in his search. (N.T. 11/23/98
morning session, pp. 37-43).

The evidence was sufficient to sustain the convictions.
The defendant further asserts that, "The Commonwealth

9

committed prosecutorial misconduct when during his closing
argument the prosecutor vouched for his witness, argued facts
beyond the record, misrepresented the trial testimony, castigated
the defendant and his attorney, and committed other [unspecified]
acts designed to inflame the jurors and prevent them from
rendering a fair and just verdict." (Statement of Matters
Complained of on Appeal, 3.c.).

The standard of review for claims of prosecutorial
misconduct based on the comments of the prosecutor is set forth
in Commonwealth v. Chester, 526 Pa. 578, 587 A.2d 1367, cert.
denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991):

> The primary guide in assessing a claim of error of this
> nature is to determine, whether the unavoidable effect
> of the contested comments was to prejudice the jury,
> forming in their minds fixed bias and hostility towards
> the accused so as to hinder an objective weighing of
> the evidence and impede the rendering of a true
> verdict. Commonwealth v. McNeal, 456 Pa. 394, 319 A.2d
> 669 (1974); Commonwealth v. Van Cliff, 483 Pa. 576, 397
> A.2d 1173 (1979). In making such a judgment, we must
> not lose sight of the fact that the trial is an
> adversary proceeding, Code of Professional
> Responsibility, Canon 7, E.C. 7-19-7-39, and the
> prosecution, like the defense, must be accorded
> reasonable latitude in fairly presenting its version of
> the case to the jury.

Commonwealth v. Chester, 526 Pa. at 599, 587 A.2d at

1377.

So long as there is a reasonable basis in the record
for the comments of the prosecutor, the court will permit

**10**

vigorous prosecutorial advocacy. Commonwealth v. Jones, 530 Pa.
591, 617, 610 A.2d 931, 943 (1992). A new trial will be granted
only where the unavoidable effect of the prosecutor's comments is
to create a hostility against the defendant such that the jury is
hindered in its job of objectively weighing the evidence.
Commonwealth v. Miles, 545 Pa.50, 514, 681 A.2d 1295, 1302
(1996); Commonwealth v. Hill, 542 Pa. 291, 666 A.2d 642 (1995).

        The defendant was tried with two co-defendants. All
three defense counsel in their closing arguments pointed the
finger of guilt at Eric Palmer, the deceased's nephew. (N.T.
11/24/98, p. 17, 38-41). The defense attempted to discredit the
testimony of Dwadia Brown, the only Commonwealth witness who
placed the defendants on the deceased's front porch at about the
time that she died. She knew the defendants' faces from seeing
them in the neighborhood, and she testified that she saw the
faces of the three men on the deceased's front porch. (N.T.
11/20/98, a.m. session, pp. 32-35).

        The defense argued that because Dwadia Brown was a drug
abuser, had not come forth immediately after the murder and had
lied to get herself placed in more comfortable quarters, she was
lying about what she saw. (N.T. 11/24/98, p. 19-20, 22-24, 43-46,
55-56, 57-60,65). The defense argued that ". . . there isn't any
corroboration of her testimony . . . . None of this was

11

corroborated by any of the testimony of (sic) the evidence that the Commonwealth produced." (N.T. 11/24/98, p. 20). The defense alleged that there was ". . . nothing whatsoever scientific or objective evidence to link these three young men to that crime." (N.T. 11/24/98, pp. 54-55). "Nothing that she testified to is consistent. Nothing that she testified to is corroborated." (N.T. 11/24/98, pp. 64-65).

A prosecutor may fairly respond to remarks of defense counsel. Commonwealth v. Beckwith, 449 Pa.Super. 433, 442, 674 A.2d 276, 281 (1996); Commonwealth v. Sanders, 380 Pa.Super. 78, 551 A.2d 239 (1988); Commonwealth v. Torres, 329 Pa.Super. 58, 477 A.2d 1350 (1984).

Commonwealth v. Barren, 501 Pa. 493, 497, 462 A.2d 233, 235 (1983) (credibility comments permissible when motivated by defense's prior attacks on Commonwealth's witnesses' credibility).

The defendant has not pointed to any specific remarks by the prosecutor which he believes were prejudicial or improper, choosing, instead, to assert generally that he ". . . vouched for his witnesses, argued facts beyond the record, misrepresented the trial testimony, castigated the defendant and his attorney, and committed other acts designed to inflame the jurors and prevent them from rendering a fair and just verdict." (Statement of

12

Matters Complained of on Appeal, item 3.c.).

The trial judge will not speculate as to what specific remarks the defendant finds objectionable. The credibility of the prosecutor's key witness was attacked by defense counsel. Counsel also insinuated that Eric Palmer might have committed the murder. The prosecutor needed to respond to the arguments as an advocate for his position. During his closing argument, he reviewed the testimony of witnesses other than Dwadia Brown and the physical evidence at the deceased's home to establish that Dwadia Brown's testimony was accurate and truthful. At the close of his argument, the prosecutor made the following statement:

> ". . . What I'm telling you is now, what Dwadia is telling you, is the truth, she is corroborated by the doctor, by Essie's body, the physical evidence, Craig Brown . . . .
>
> . . . .
>
> She's not a liar, she's a crack head, she's a pain in the butt, but she told you the truth.
> (N.T. 11/24/98, p. 92).

The prosecutor's reference to the trustfulness of Dwadia was based a review of the evidence, not on the prosecutor's personal belief. It was merely a fair response to the defense arguments concerning her credibility.

There were only two references to the defendants and their attorneys. The first occurred when the prosecutor told the jury that he had not picked the witnesses to the crime. "The persons who picked my witnesses for this case, the person who picked the victim are those three men there [the defendants]."

13

(N.T. 11/24/98, p. 76). That statement was a reasonable inference which the prosector was asking the jury to make from the evidence presented.

In referring to the cross-examination of Dwadia Brown, the prosecutor argued as follows:

> "Why is she sitting here spending the whole day Friday answering questions by those three lawyers, it's not pleasant and they were attacking her --
>
> . . . .
>
> "They were trying to trick her up and down to see if she was lying or show that she is lying . . . . [A]t least that woman got involved and stood tall."
> (N.T. 11/24/98, p. 80).

The remarks of the prosecutor were merely his characterization, and an accurate one, of what defense counsel was trying to accomplish on cross-examination.

Viewed in its entirety, the closing argument of the prosecutor represented nothing more than fair response to the defense attacks on the credibility of his key witness and zealous advocacy, all of which was proper.

The judgment of the trial court should be affirmed.

Steven R. Geroff
                                              J.

Carlos Vega, Esquire
Assistant District Attorney
    for the Commonwealth

Thomas L. McGill, Jr., Esquire
Attorney at Law
    for the Defendant

14

Exhibit B

767 A2d 1114

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
                                  :      PENNSYLVANIA
                  Appellee        :
                                  :
        v.                        :
                                  :
JERMEL SHULER,                    :
                                  :
                  Appellant       :      No. 920 EDA 1999

Appeal from the Judgment of Sentence January 25, 1999
In the Court of Common Pleas of Philadelphia County
Criminal No. 9801-0300 2/3

BEFORE: DEL SOLE, HUDOCK and STEVENS, JJ.

MEMORANDUM:                          ! **FILED** OCT 6 2000

This is an appeal *nunc pro tunc* from the judgment of sentence entered
in the Court of Common Pleas of Philadelphia County following Appellant's
conviction on the charges of second-degree murder, burglary, possessing an
instrument of crime, and criminal conspiracy. On appeal, Appellant contends
that the evidence was insufficient to sustain his convictions and that his
sentence is illegal. We vacate Appellant's sentence on the charge of
burglary; however, in all other respects we affirm.

Appellant's first contention is that the evidence was insufficient to
sustain his convictions. "The law is settled in this Commonwealth that in
reviewing the sufficiency of the evidence, the appellate court is required to
review all the evidence and all reasonable inferences drawn therefrom in the
light most favorable to the Commonwealth,...[as verdict winner]."
***Commonwealth v. Earnest***, 563 A.2d 158, 159 (Pa.Super. 1989) (citations

omitted). "The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." **Commonwealth v. Taylor**, 471 A.2d 1228, 1299 (Pa.Super. 1984) (citation omitted). Moreover, "it is clear that a jury may believe all or only a part of a witness' testimony, and so long as the verdict is supported by the evidence there is no basis for interference with the fact-finding function of the jury." **Commonwealth v. Simpson**, 462 A.2d 821, 824 (Pa.Super. 1983) (citation omitted).

Based on the aforementioned standard, the evidence reveals the following: On November 9, 1997, Eric Palmer arrived by bus in Philadelphia with the intent of staying with his seventy-three-year-old aunt, whom Mr. Palmer telephoned to no avail. Not wishing to arrive at his aunt's house unexpectedly at night, Mr. Palmer stayed with some friends and did not go to his aunt's house until 7:00 a.m. on November 10, 1997. Upon arrival, Mr. Palmer noticed glass on the front porch, looked inside the living room window, and saw his aunt's lifeless body lying on the floor. Mr. Palmer kicked in the front door, went inside his aunt's house, and yelled to a neighbor, who was outside, to call 911.

Philadelphia Police Officer Michael Hale, Detective Theodore Cannon, and Police Officer Michael Ferguson, a member of the Mobile Crime Detection Unit, were immediately dispatched to the home of the victim located at 2952 North Judson Street. Upon arrival, Office Hale observed the victim deceased and lying on the living room floor. The victim had been badly beaten

stabbed numerous times. Upon examination, Officer Hale and Detective Cannon discovered that a pane of glass was missing from the front door, that the front door's frame was damaged where the lock mechanism intersected with the door, that the backdoor was open, that splatters of blood were scattered throughout the living room, and that a bloody broom was located near the victim's body.

After investigating the crime, Appellant and his two cohorts were arrested and charged in connection with the murder. The trio proceeded to a joint jury trial, where numerous witnesses testified. For example, Dwadia Brown testified that she lived across the street from the victim and that, at 10:45 p.m. on November 8, 1997, she was outside when she saw Appellant and Rasheed Smith standing on the victim's porch and another man, Mark Brittingham, exit the victim's residence, while stuffing a brown envelope into his back pocket.[1] N.T. 11/20/98 at 33. Ms. Brown testified that, once on the porch, Mr. Brittingham stated, "we forgot to lock the back door," and the men then walked away from the scene together. N.T. 11/20/98 at 37. Ms. Brown testified that she recognized the men and had seen them in the neighborhood on prior occasions, and, during the trial, Ms. Brown positively identified Appellant and his two co-defendants as the men she had seen at the victim's residence. N.T. 11/20/98 at 35. Moreover, Ms. Brown testified

---

[1] It was established that the victim kept lottery tickets and money in a brown envelope.

that after the incident the police questioned her, and she told them what she had seen. Later, she saw Smith on the street, Smith indicated that he knew she had been talking to the police, and Smith asked why she was jeopardizing her life and her children's lives by so doing. N.T. 11/20/98 at 44.

In addition, in order to establish the time of death, the Commonwealth presented the testimony of Robin McDonald, the victim's cousin, Calton and Elizabeth Lawrence, the victim's next door neighbors, and Bennett Prestound, M.D., an assistant medical examiner. Ms. McDonald testified that the victim telephoned her mother's residence on November 8, 1997 at approximately 7:11 p.m.

Mr. Lawrence testified that the walls between his residence and the victim's residence were "thin" and that he could generally hear what was going on in the victim's house. He testified that he would certainly be able to hear someone if they were screaming in the victim's residence. N.T. 11/19/98 at 7. He testified that he never heard any screams from the victim's residence; however, he left his residence at 7:00 p.m. on November 8, 1998, and he did not return until midnight. N.T. 11/19/98 at 8. He testified that he heard no noise coming from the victim's home on November 9, 1998. N.T. 11/19/98 at 10-11. He confirmed that he saw the victim's nephew early on the morning of November 10, 1998, and that he called 911 to report that the victim was lying on the floor. N.T. 11/19/98 at 15.

-4-

Elizabeth Lawrence confirmed her husband's testimony. In addition, Dr. Prestound testified that the victim was discovered on November 10, 1998, and he estimated that she had been killed one or two days earlier. N.T. 11/23/98 at 18.

At the conclusion of the jury trial, Appellant was convicted of second-degree murder, burglary, possessing an instrument of crime, and criminal conspiracy. Appellant was sentenced to life in prison for second-degree murder, five to ten years imprisonment for burglary, two and one-half to five years for possessing an instrument of crime, and five to ten years for criminal conspiracy, the sentences to run concurrently. Appellant did not file a timely appeal, however, on March 10, 1999, the trial court entered an order permitting Appellant to file an appeal *nunc pro tunc*, and this appeal was filed.[2] On March 18, 1999, the trial court ordered Appellant to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), Appellant so complied on October 18, 1999, and the trial court filed an opinion.[3]

---

[2] Appellant apparently requested permission to file an appeal *nunc pro tunc*; however, such request does not appear in the certified record.

[3] Appellant filed his 1925(b) statement in an untimely manner; however, the trial court chose to overlook the untimeliness of the statement and addressed the issues raised therein. As such, we decline to find waiver on this basis. **See Commonwealth v. Ortiz**, 745 A.2d 662 (Pa.Super. 2000) (holding that where Appellant filed an untimely Pa.R.A.P. 1925(b) statement, but the trial court addressed the merits of the issues raised therein, waiver is not found under **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998)).

As indicated previously, Appellant's first contention is that the evidence was insufficient to sustain his convictions. In order to analyze Appellant's claim properly, we must keep the following statutory provisions in mind:

18 Pa.C.S.A. § 2502 provides that "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of the felony." Section 2502 further provides that perpetration of a felony is "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping."

18 Pa.C.S.A. § 3502 provides that "[a] person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S.A. § 903 provides, in relevant part, the following:

**(a) Definition of conspiracy.-**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
 (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
 (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

***

**(c) Conspiracy with multiple criminal objectives.-**If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

\*\*\*

**(e) Overt act.-**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proven to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 907 provides that "[a] person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." An "instrument of crime" is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d).

Appellant contends that the evidence reveals that he and his cohorts were merely present on the victim's front porch during the evening of November 8, 1997. He claims that (1) there is no evidence that he or his cohorts gained entry into the victim's home, (2) there was no physical evidence introduced at trial connecting Appellant and his cohorts to the crimes, (3) there is no evidence establishing the time of the victim's death, thereby connecting Appellant's presence to the murder at issue, (4) there is no evidence of a conspiratorial agreement, and (5) no one saw Appellant or his cohorts with a knife or broomstick. Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we conclude that the evidence reveals that Appellant was more than "merely present" at the

scene, and that he either committed the murder/burglary or conspired/acted as an accomplice with his cohorts to commit the crimes.

We disagree with Appellant's assertion that there is no evidence that he or his cohorts gained entry into the victim's residence. Ms. Brown specifically testified that she saw co-defendant Mark Brittingham exit the victim's residence while stuffing an envelope into his back pocket. N.T. 11/20/98 at 33. She further testified that Brittingham stated "we forgot to lock the back door," thereby indicating that the men had been inside of the house. N.T. 11/20/98 at 37.

Moreover, contrary to Appellant's argument, we find that the Commonwealth was not required to introduce physical evidence connecting Appellant and his cohorts to the scene. The eyewitness testimony, together with the evidence establishing the victim's time of death, were sufficient to establish guilt in this case. *See Commonwealth v. Chester*, 410 Pa. 45, 188 A.2d 323 (1963) (holding that the evidence was sufficient where circumstantial eyewitness testimony established the crimes at issue).

Moreover, we conclude that the evidence sufficiently established the victim's time of death, thereby connecting Appellant's and his cohorts' presence on the porch to the killing of the victim. As indicated earlier, Dr. Prestound testified that the victim had died on either November 8 or 9, 1998. Also, Mr. and Mrs. Lawrence testified that they heard no common sounds coming from the victim's home on November 9, 1998, and Ms.

McDonald testified that the victim left a message on her mother's answering machine at 7:11 p.m. on November 8, 1998, thereby indicating that the victim was alive at that time. We note that the Commonwealth was not required to establish the precise time of the victim's death. Rather, it was sufficient that the Commonwealth presented evidence estimating the time of death, thereby connecting Appellant's presence on the victim's porch to the time of the killing. *See Commonwealth v. Allen*, 409 A.2d 106 (Pa.Super. 1979) (holding that circumstantial evidence placing Appellant at the scene during the **estimated** time of death was sufficient to convict him of murder).

In addition, we find that there was sufficient evidence of a conspiratorial agreement in this case. Contrary to Appellant's argument, the Commonwealth established that Appellant and his cohorts agreed to engage in the burglary of the victim's residence. For instance, Ms. Brown testified that when co-defendant Brittingham exited the victim's home, he stated that "**we** forgot to lock the back door," and the trio then walked away from the scene **together**. N.T. 11/20/98 at 37 (emphasis added). Brittingham's statement was made while Appellant was standing on the victim's front porch late at night with a broken pane of glass strewn around. We note that direct evidence of the conspiratorial agreement was unnecessary; rather, it



-9-

was sufficient for the Commonwealth to present circumstantial evidence.[4]
**Commonwealth v. Olds**, 469 A.2d 1072 (Pa.Super. 1983).

Finally, it was unnecessary for the Commonwealth to present direct evidence of Appellant's and his cohort's possession of an instrument of crime. **Commonwealth v. Woodbury**, 477 A.2d 890 (Pa.Super. 1984) (holding that circumstantial evidence was sufficient to establish crime of possessing an instrument of crime even though no one actually saw the appellant with a weapon).

Appellant's final allegation is that his sentence is illegal.[5] Specifically, Appellant contends that his concurrent sentence of life imprisonment for second-degree murder and five to ten years imprisonment for burglary should have merged because the underlying felony is an element of the charge of second-degree murder. We agree that the crimes merged for sentencing purposes. **See Commonwealth v. Maddox**, 453 A.2d 1010 (Pa.Super. 1982) (holding that where burglary was the underlying felony

---

[4] To the extent Appellant is arguing that he is not guilty of second-degree murder because he agreed to commit the burglary only and did not specifically agree to kill the victim, we find the argument to be unavailing. **See Commonwealth v. Olds**, 469 A.2d 1072 (Pa.Super. 1983) (holding that the evidence was sufficient to prove felony-murder and criminal conspiracy where the appellant entered into a conspiracy to commit robbery and his co-conspirator killed the victim in the course of the robbery event thought the appellant did not assist in or approve of the murder).

[5] Appellant failed to include his final claim in his Pa.R.A.P. 1925(b) statement and the trial court did not address the issue in its opinion. However, since it is a challenge to the legality of the sentence, we decline to find the issue to be waived. **See Commonwealth v. Garnett**, 485 A.2d 821, 829 (Pa.Super. 1984) ("A question as to the legality of the sentence is never waived.").

with regard to second-degree murder, the convictions merged for sentencing purposes). However, since the sentencing court imposed concurrent sentences, we find it unnecessary to remand for resentencing. **Commonwealth v. Ruffin**, 463 A.2d 1117 (Pa.Super. 1983). "Because the trial court imposed concurrent sentences, it is clear that the court deemed the offenses to have arisen from a single episode. The illegality, therefore, can be corrected by vacating the sentence imposed for [burglary], leaving undisturbed the sentence for murder in the second-degree." **Ruffin**, 463 A.2d at 1121.

Judgements of sentence for second-degree murder, conspiracy, and possession of an instrument of crime are affirmed. The separate sentence for burglary is vacated.

Judgment Entered.

Prothonotary

Date: **OCT 6 2000**

# Exhibit C

12/30/02. Pg. 1506-11.5.

IN THE COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

TRIAL DIVISION - CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA    :   CP 9801-0300 $^{2}/3$
                                              :
            vs.                           :
                                              :
JERMEL SHULER                      :   HOMICIDE - PCRA

## OPINION

GEROFF, J.

On November 30, 1999, after a jury trial, the defendant
was convicted of second degree murder, burglary, possession of an
instrument of crime and criminal conspiracy. His conviction was
affirmed by the Superior court on October 6, 2000. On May 29,
2001, a petition for allowance of appeal was denied by the
Pennsylvania Supreme Court. On May 30, 2002, defendant filed a pro
se petition pursuant to the Post Conviction Relief Act ("PCRA"), 42
Pa.C.S.A. §9541.[1] In that petition, he claims that his trial
counsel was ineffective for advising him that he would not be a
good witness because his credibility would be impeached on cross-

---

[1] The petition was timely filed because it was filed within
one year and 90 days after the judgment of the Supreme Court of
Pennsylvania, the time within which he could have petitioned the
Supreme Court of the United States for a writ of certiorari.
Commonwealth v. Ceo, 812 A.2d 1263 (Pa.Super. 2002).

1

examination by introduction of his prior record, for failing to file a pre-trial motion to ascertain what the Commonwealth would use to impeach him and for failing to file a motion *in limine* to prevent use of prior arrests which did not result in convictions. He further asserted that trial counsel was ineffective for interfering with his right to testify at trial. He asserts that he wanted to testify that he was at home with his mother, Annette Shuler and his cousin, Latia Brown, at the time the crime was committed. He also asserts that he would have testified that the Commonwealth's key witness, Wadia Brown, had an unstated motive to implicate him falsely in the crime. He asserts that his appellate counsel was ineffective for failing to raise and argue the foregoing issues.

MaryAnn F. Swift, Esquire was appointed to represent him. Ms. Swift filed a letter pursuant to Commonwealth v. Finley, 434 Pa.Super. 524, 644 A.2d 204 (1988); her letter was accepted by the trial court, and the petition was dismissed. The defendant filed a *pro se* appeal to the Superior Court.

The competence of counsel is presumed, and appellant has the burden of proving otherwise. Commonwealth v. Balodis, 560 Pa. 567, 747 A.2d 341, 343 (2000). To establish ineffectiveness, the defendant must prove that the underlying claim is of arguable merit, that counsel's course of conduct was without a reasonable

2

basis designed to effectuate his interest and that he was prejudiced by counsel's action or omission in such a way that there is a reasonable probability that the outcome of the trial would have been different. Commonwealth v. Hill, 542 Pa. 291, 307, 666 A.2d 642, 650 (1995), cert. denied, 116 S.Ct. 1880 (1996); Commonwealth v. Douglas, 537 Pa. 588, 645 A.2d 226, 230 (1994). The same standard applies under the PCRA as ineffectiveness is considered on direct appeal. Commonwealth v. Kimball, 724 A.2d 326, 332 (Pa. 1999).

When the defendant asserts a claim of ineffectiveness based on trial counsel's failure to call a witness, he must show that: 1) the witness existed; 2) the witness was available; 3) counsel knew or should have known about the witness; 4) the witness was prepared to cooperate and testify at trial; and 5) absence of the testimony prejudiced the defendant. Commonwealth v. Holland, 556 Pa. 175, 182, 727 A.2d 563, 566-67 (1999); Commonwealth v. Smolko, 446 Pa.Super. 156, 171, 666 A.2d 672, 679 (1995).

Essentially, the defendant claims that he had an alibi. He did not attach affidavits of his mother or cousin to the petition. In fact, he does not claim that they were available and willing to testify that he was at home when the crime was committed. He merely asserts that his counsel interfered with his right to testify that he was at home with his mother and cousin.

3

Contrary to the defendant's assertions that his trial counsel interfered with his right to testify, the trial record contains a detailed colloquy in which the defendant asserts that he had freely made the decision not to testify, that no one had threatened or coerced him and that he was satisfied with the advice of his counsel. (N.T. 11/24/98 pp. 3-6). Having failed to win an acquittal in his first trial while remaining silent, the defendant now wants to have a second bite at the apple to see if he can do so by testifying. The allegations contradict the record and are without merit.

The dismissal of the petitioner's PCRA petition should be affirmed.

Steven R. Deroff
                                                J.

Israel Soong, Esquire
Assistant District Attorney
    for the Commonwealth

MaryAnn F. Swift, Esquire
Attorney at Law
    for the Defendant

Jermel Shuler, *pro se*

4

# Exhibit D

J. S06012/04

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JERMEL SHULER, | : | |
| | : | |
| Appellant | : | No. 120 EDA 2003 |

Appeal from the PCRA Order December 4, 2002
In the Court of Common Pleas of Philadelphia County
Criminal at No(s): 9801-0300 2/3

BEFORE: BENDER, PANELLA, and CAVANAUGH, JJ.

MEMORANDUM:                                    Filed: February 10, 2004

Jermel Shuler (Appellant) appeals *pro se* from the order entered

December 4, 2002, dismissing his petition brought pursuant to the Post

Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

On November 30, 1998, a jury found Appellant guilty of second degree

murder, burglary, possession of an instrument of crime and criminal

conspiracy. Appellant was sentenced to life in prison for the murder charge

and lesser concurrent sentences for the other offenses. This Court affirmed

Appellant's judgment of sentence with the exception of the burglary

sentence, which was vacated, and the Supreme Court denied the petition for

allowance of appeal. **Commonwealth v. Shuler**, 767 A.2d 1114 (Pa.

Super. 2000), *appeal denied*, 782 A.2d 544 (Pa. 2001). On May 30, 2002,

Appellant filed the instant *pro se* PCRA petition raising claims of effective assistance of his prior counsel.

The trial court appointed MaryAnn F. Swift, Esq. to represent Appellant in connection with his PCRA petition. After review of the record, Attorney Swift filed a letter pursuant to **Commonwealth v. Finley**, 644 A.2d 204 (Pa. Super. 1988), which was accepted by the trial court and Appellant's PCRA petition was dismissed by order dated December 4, 2002. Appellant filed a *pro se* notice of appeal to this Court on December 30, 2002. The trial court prepared an opinion concerning the dismissal of Appellant's PCRA petition, which was filed on April 30, 2003.

In his *pro se* brief to this Court, Appellant presents one issue for our review:[1]

> Prior counsel was ineffective for failing to file ineffective assistance of counsel against (all prior counsels) when counsels failed to file and or submit a motion in limine at Petitioner's behest.

Appellant's brief at 5.

Appellant argues that his trial counsel failed to file a motion in limine which would have raised the scope of impeachment evidence permitted if Appellant had chosen to testify. Appellant further argues that all subsequent counsel were ineffective for failing to raise trial counsel's failure to file the motion in limine. Although Appellant's rambling argument is contained

within only two pages of his brief, the core of his argument centers on his uncertainty as to whether prior arrests, which did not result in convictions, could be used to impeach him if he took the stand. Appellant claims his trial counsel informed him that the motion in limine would be filed; however, trial counsel failed to do so. The failure to file such a motion, Appellant argues, eliminated his right to testify on his own behalf. Appellant further argues that if he had testified, the prosecution's star witness would have been viewed as unreliable and, we assume, the verdict would have been different. Accordingly, Appellant requests that this Court remand the case for an evidentiary hearing at which time Appellant could set forth the testimony he would have presented at trial.

The first problem with Appellant's argument rests on his failure to disclose to this Court what his testimony would have been that would have caused the prosecution witness to be found unreliable. Although he asks for a remand to tell his story at an evidentiary hearing, he fails to inform this Court of the nature of the proposed testimony. In his PCRA petition, Appellant sets forth the following statement concerning this argument.

Without the Court's prior determination Petitioner was prejudiced because he did not knowing[ly] and intelligently waive his right to testify in his own defense. Had Petitioner knew [sic] his prior theft case could not or would not be used against him to impeach his credibility at trial, he would have testified that he was in the house, his Mother's home when the crime in question

---

[1] It should be noted that Appellant's *pro se* brief contains no statement of questions presented as required by Pa.R.A.P. 2116. Rather, Appellant's issue is set forth after a heading entitled "Summary Argument."

- 3 -

was committed, that Wadia Brown only implicated Petitioner because he would not give her more crack cocaine, that Ms. Shuler and Ms. Burrus would corroborate the fact that Wadia Brown had a motive to accuse Petitioner as being present at the crime scene with alleged accomplices Mark Brittingham and Rasheed Smith when Mark Brittingham is claimed to have uttered **"We forgot to lock the back door"**, and all parties walked away together. (N/T, 1/20/98, at 37).

Appellant's PCRA Petition at 9 (emphasis in original).

The trial court addressed the issue raised in this Court and more fully

developed in Appellant's PCRA Petition as follows.

The competence of counsel is presumed, and Appellant has the burden of proving otherwise. *Commonwealth v. Balodis*, 560 Pa. 567, 747 A.2d 341, 343 (2000). To establish ineffectiveness, the defendant must prove that the underlying claim is of arguable merit, that counsel's course of conduct was without a reasonable basis designed to effectuate his interest and that he was prejudiced by counsel's action or omission in such a way that there is a reasonable probability that the outcome of the trial would have been different. *Commonwealth v. Hill*, 542 Pa. 291, 307, 666 A.2d 642, 650 (1995), *cert. denied*, 116 S.Ct. 1880 (1996); *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 266, 230 (1994). The same standard applies under the PCRA as ineffectiveness is considered on direct appeal. *Commonwealth v. Kimball*, 724 A.2d 326, 332 (Pa. 1999).

When the defendant asserts a claim of ineffectiveness based on trial counsel's failure to call a witness, he must show that: 1) the witness existed; 2) the witness was available; 3) counsel knew or should have known about the witness; 4) the witness was prepared to cooperate and testify at trial; and 5) absence of the testimony prejudiced the defendant. *Commonwealth v. Holland*, 556 Pa. 175, 182, 727 A.2d 563, 566-67 (1999); *Commonwealth v. Smolko*, 446 Pa. Super. 156, 171, 666 A.2d 672, 679 (1995).

Essentially, the defendant claims that he had an alibi. He did not attach affidavits of his mother or cousin to the petition. In fact, he does not claim that they were available and willing to

testify that he was at home when the crime was committed. He merely asserts that his counsel interfered with his right to testify that he was at home with his mother and cousin.

Trial Court Opinion, 4/30/03, at 2-3.

In his two pages of argument to this Court, the issue is not sufficiently developed to warrant relief. Even in the trial court, where Appellant's argument was more fully developed, relief was also unwarranted. As the trial court points out, this argument is in effect an alibi defense which is not supported by appropriate affidavits. Furthermore, it should be noted that Appellant fails to offer any explanation as to why the alibi evidence of his mother and cousin could not have been presented absent his testimony. There might have been any number of reasons why Appellant should not have taken the stand; however, the testimony of his mother and cousin were not precluded by Appellant's decision not to testify.

Even if Appellant had more fully developed his argument, he would still face a major hurdle concerning his decision not to testify. The record contains a colloquy wherein Appellant clearly stated his desire not to testify and his satisfaction with his counsel.

THE COURT: [You have] the absolute right either to speak on your own behalf, if you wish to testify. No one can take that right away from you. Do you understand that, … Mr. Shuler?

THE DEFENDANT: Yes.

THE COURT: On the other hand, I [sic] have the absolute right not to testify. Nobody can take that right away from you, do you understand that, … Mr. Shuler?

THE DEFENDANT: Yes.

THE COURT: Have you ... discussed individually with your own attorney the question of whether or not it's in your best interest or whether or not you should testify in this case?

. . . .

THE DEFENDANT: Yes.

THE COURT: And are you satisfied at this point with the advice and representation you had from your attorney, ... Mr. Shuler?

THE DEFENDANT: Yes.

. . . .

THE COURT: Mr. [Shuler], have you reached a decision as to whether you wish to testify or not?

. . . .

THE DEFENDANT: I reached a decision.

THE COURT: What is that decision?

THE DEFENDANT: No.

N.T., 11/24/98, at 3-5.

Based on the above colloquy, we conclude that Appellant made a knowing, voluntary and intelligent waiver of his right to testify. Appellant cannot in the face of such a colloquy claim ineffective assistance of counsel based on his failure to testify. *See Commonwealth v. Lawson*, 762 A.2d 753 (Pa. Super. 2000); *Commonwealth v. Spells*, 416 A.2d 470, 474 (Pa. 1980).

Order affirmed.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JERMEL SHULER               :       CIVIL ACTION

       v.                     :

LOUIS FOLIO, <u>et al</u>         :       NO.  04-4704

## <u>CERTIFICATE OF SERVICE</u>

I, SUSAN E. AFFRONTI, hereby certify that on February 16, 2005, a copy of the

foregoing pleading was served by placing same, first-class, postage prepaid, in the U.S.

Mail, addressed to:

>Jermel Shuler, DV-8750
>SCI – Greene County
>175 Progress Dr.
>Waynesburg, PA  15370

SUSAN E. AFFRONTI
Assistant District Attorney
District Attorney's Office
1421 Arch Street
Philadelphia, PA 19102
(215) 686-5705